UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No.:  19-143 (PJS/BRT)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>      v.<br><br>PHELIXIS FITZGERALD MAR ROBINSON,<br>   a/k/a "Storm,"<br><br>           Defendant. | **POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING** |

The United States of America, by and through its attorneys, Erica H. MacDonald, United States Attorney for the District of Minnesota, and Thomas Calhoun-Lopez, Assistant United States Attorney, hereby submits this memorandum setting forth its position with respect to sentencing factors in this matter.

The United States asks this Court to sentence the Defendant to a term of imprisonment within his advisory Guideline range of 168 TO 210 months.  The Defendant reaped immense profit by trafficking a lethal drug in the communities of Minnesota.  He possessed an alarming number of firearms to that end.  He has a significant criminal history that includes a prior felony drug trafficking conviction and convictions for attempted murder.  A sentence within his Guideline range is reasonable and appropriate under the sentencing objectives of U.S. law.

## THE PRESENTENCE INVESTIGATION REPORT

**I.  The Government's Position Regarding the Guidelines.**

The United States agrees with the conclusions set forth in the Presentence

Investigation Report (PSR) concerning the Defendant's Guidelines calculations. Because the Defendant is responsible for between three and ten kilograms of heroin, the base offense level is 32. (PSR ¶ 18.) Because the Defendant possessed firearms in connection with the offense, two levels are added.[1] (PSR ¶ 19.) Because the Defendant maintained a premises for storing the heroin, an additional two levels are added.[2] (PSR ¶ 20.) With credit for acceptance of responsibility, his total offense level is 33. (PSR ¶ 29.) In criminal history category III, the advisory Guideline range is therefore 168 to 210 months' imprisonment. (PSR ¶¶ 42, 88.)

## II.     The Defendant's Objections to the PSR.

The Defendant has made two objections to the PSR: 1) he objects to the upward adjustment of two levels for maintaining a premises for storing his heroin (PSR ¶ 20); and 2) he objects to the assessment of six criminal history points for his convictions from Cook County, Illinois, in Docket No. 2000CR174520 (PSR ¶ 38). (PSR A.1–A.2.) The United States opposes these objections.

   a.     The Adjustment for Maintaining a Premises.

The Sentencing Guidelines call for an upward adjustment of two levels if a defendant "maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). The Guidelines clarify that "premises"

---

[1] The Defendant possessed six firearms in a storage locker in Little Canada, Minnesota. (PSR ¶¶ 11, 19.) Also in the storage locker were two scales with heroin residue and $371,060 in cash. (*Id.*)

[2] The Defendant stored 4.12 kilograms of heroin in a storage locker in West St. Paul, Minnesota. (PSR ¶¶ 11, 20.) Also in the storage locker was $174,340 in cash. (*Id.*)

2

includes "a building, room, or enclosure." U.S.S.G. § 2D1.1, comment. (n.17). The adjustment applies to defendants who store controlled substances for the purpose of distribution. *Id.* In determining whether a defendant "maintained" the premises, courts are to consider "whether the defendant held a possessory interest in (e.g., owned or rented) the premises" and "the extent to which the defendant controlled access to, or activities at, the premises." *Id.* The drug trafficking purposes must be "one of the primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises." *Id.* In assessing the purpose, courts are to consider "how frequently the premises was used by the defendant" for drug trafficking, and "how frequently the premises was used by the defendant for lawful purposes."

In this case, the Defendant stored 4.12 kilograms of heroin in a storage locker in West St. Paul, Minnesota, along with $174,340 in cash. (PSR ¶ 11.) The storage locker plainly qualifies as an "enclosure" under § 2D1.1. *See, e.g.*, *United States v. Johnson*, 558 F. App'x 902, 905 (11th Cir. 2014) (upholding application of the two-level adjustment for defendant who manufactured methamphetamine in a storage unit); *United States v. Casanova*, 677 F. App'x 545, 554 (11th Cir. 2017) (upholding application of the adjustment for defendant who used storage units to traffic cocaine). *See also United States v. Garcia*, 774 F.3d 472, 475 (8th Cir. 2014) (upholding the adjustment for defendant who stored methamphetamine in detached garage).

The Defendant had a possessory interest in the locker—he rented the lockers and frequented them often. (PSR ¶ 9.) Storage of drugs and drug tools are not simply the primary purpose of the lockers—it appears to be sole purpose. The storage locker in West

St. Paul contained heroin and $174,340 in drug proceeds. (PSR ¶ 11.) The storage locker in Little Canada contained six firearms, ammunition, magazines, scales with heroin residue, and $371,060 in drug proceeds. (*Id.*)

Because the Defendant maintained the storage locker to store drugs for subsequent distribution, the adjustment is appropriate.

      b.      The Defendant's Criminal History.

As a general rule, prior sentences resulting from offenses contained in the same charging instrument or imposed on the same day are counted as a single sentence. U.S.S.G. § 4A1.2(a)(2). Where these multiple convictions counted as a single sentence consist of crimes of violence, however, each conviction that did not otherwise receive a criminal history point is to be assessed one point. U.S.S.G. § 4A1.1(e). A "crime of violence" is any state or federal felony that "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion," or the unlawful possession of specified firearms or explosive devices. U.S.S.G. § 4B1.2(a).

In this case, the Defendant was convicted of the following crimes in one Cook County case: two counts of attempted murder, two counts of aggravated battery, and two counts of unlawful possession of a weapon. (PSR ¶ 38.) He was sentenced to concurrent

4

terms of imprisonment of 12 years' for each counts in 2003.[3]  Because the Defendant received a sentence of imprisonment exceeding one year and one month within 15 months of the commission of the instant offense, the conviction at the outset yields three criminal history points.  (PSR ¶ 38; U.S.S.G. § 4A1.1(a).)  Applying the points to one conviction for attempted murder, the following crimes would receive no points: one count of attempted murder, two counts of aggravated battery, and two counts of unlawful possession of a weapon.  (PSR ¶ 38.)  Three of these conviction—attempted murder and aggravated battery—are crimes of violence.  Each is addressed separately below.

The Defendant's attempted murder conviction is categorically a crime of violence. U.S.S.G. § 4B1.2(a)(2).  The fact that the conviction is for *attempted* murder does not change the status, as the definition of "crime of violence" includes "the offenses of aiding and abetting, conspiring, and *attempting to commit* such offenses."  U.S.S.G. § 4B1.2, comment. (n.1) (emphasis added).

The Defendant's aggravated battery convictions likewise qualify as crimes of violence.  One is a conviction for aggravated battery with a firearm.  (PSR ¶ 38.)  Under Illinois law, causing injury by the discharge of a firearm constitutes aggravated battery.[4] 720 Ill. Comp. Stat. Ann. 5/12-3.05(e).  The second conviction is aggravated battery – great

---

[3] The Defendant was initially sentenced to 37 years' imprisonment for one of the counts of attempted murder; however this sentenced was amended the next month to 12 years' imprisonment.  (PSR ¶ 38.)

[4] The statute lists eight subsections, depending on the type of victim and firearm. 720 Ill. Comp. Stat. Ann. 5/12-3.05(e).  Each has as an element that the firearm was discharged, causing injury.

bodily harm. (PSR ¶ 38.) Under Illinois law, causing great bodily harm in committing a battery other than by discharge of a firearm constitutes aggravated battery. 720 Ill. Comp. Stat. Ann. 5/12-3.05(a). Both these crimes have as an element the use or attempted use of physical force against the person of another. They therefore qualify as crimes of violence under U.S.S.G. § 4B1.2(a)(1). *See United States v. Roman*, 917 F.3d 1043, 1047 (8th Cir. 2019) (finding that Illinois aggravated battery conviction, for a different Illinois aggravated battery (aggravated battery on a public way, in violation of 720 Ill. Comp. Stat. Ann. 5/12-3.05(a), is a crime of violence).

Because the Defendant's prior sentence includes three crimes of violence that did not receive criminal history points because they were treated as a single sentence, each of these crimes should receive one criminal history point pursuant to U.S.S.G. § 4A.1(e).[5] As a result, the Defendant has six criminal history points, placing him in criminal history category III.

## ARGUMENT

### III.     The Appropriate Sentence in Light of 18 U.S.C. § 3553(a).

In addition to determining the Defendant's Sentencing Guideline range (18 U.S.C. § 3553(a)(4)), this Court is required to assess the other applicable sentencing factors under Section 3553(a) of federal sentencing law. Those factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for

---

[5] The Defendant has also objected that these additional counts were dismissed when his original sentence of 1/22/2003 was amended on 2/11/2003. This does not comport with documents the United States has seen.

6

the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to victims. 18 U.S.C. § 3553(a).

Pursuant to these factors, the United States requests a sentence of the Defendant to a term of imprisonment of between 168 to 210 months.

### A. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and to Provide Just Punishment for the Offense.

The Defendant reaped immense profit by trafficking a lethal drug in Minnesota communities. The heroin and opioid crisis is at this point well-documented. A 2018 report by the Centers for Disease Control and Prevention pointed out in a 15-month period between 2016 and 2017, the Midwest saw an almost 70% increase in opioid overdoses. Vivolo-Kantor AM, Seth P, Gladden RM, et al. *Vital Signs: Trends in Emergency Department Visits for Suspected Opioid Overdoses — United States*, July 2016–September 2017. MMWR Morb Mortal Wkly Rep 2018;67:279–285. DOI: http://dx.doi.org/10.15585/mmwr.mm6709e1. In that timeframe, the country as a whole saw 142,557 suspected opioid overdoses in emergency rooms. *Id.* The scourge of heroin and other opioids is nothing less than a public health crisis, and represents a clear and present danger to communities in Minnesota and nation-wide.

Clearly, the Defendant does not bear the burden for an epidemic that has been years in the making. But he does bear responsibility for the part he played in contributing to it,

7

which was substantial. Law enforcement recovered $547,335 in cash in their searches of March 24, 2019: $371,060 in the storage locker in Little Canada, $174,340 in the storage locker in West St. Paul, and $1,935 in the Defendant's vehicle. (PSR ¶ 11.) This money represents poison injected into communities in Minnesota. At the same time, the Defendant has good reason to know how dangerous this drug is—one of how own customers died of a heroin overdose (PSR ¶ 6.)[6]

The Defendant reaped immense profit from trafficking a drug that spreads misery and death. A significant sentence is necessary to provide just punishment for his crime.

### B. The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public.

By the same token, a lengthy sentence is necessary to deter the Defendant and to protect the public from him. This is the Defendant's tenth felony conviction, his fourth drug conviction, and his second drug trafficking conviction. (PSR ¶¶ 34, 36, 38–39.) In his first felony, in 1992, he was found with 11 bags of cocaine. (PSR ¶ 34.) In 1996 he was convicted in Cook County of drug trafficking, after he was caught with 56 bags of cocaine. (PSR ¶ 36.) He was sentenced in that crime to four years' imprisonment. (*Id.*) In 2000, he shot someone in the arm, leg, and shoulder. (PSR ¶ 38.) As delineated in § II.b, infra, this crime yielded convictions of two counts of attempted murder, two counts of aggravated battery, and two counts of unlawful possession of a weapon. (PSR ¶ 38.)

---

[6] This argument is not intended to suggest that the Defendant's heroin caused the overdose. The United States agrees with the PSR's conclusion that the source of the heroin that led to the overdose is unknown. (PSR ¶ 6.) The United States raises the overdoes to showcase that the danger of the drug is clear, and was clear to the Defendant.

He received a sentence of 12 years in that case. (*Id.*) In 2001 (while his 2003 case was pending) he apparently graduated from trafficking cocaine to trafficking heroin as well—he was arrested with 36 packets of heroin and four bags of cocaine base. (PSR ¶ 39.) The Defendant was caught with these drugs near a school. (*Id.*)

The Defendant's criminal history is replete with violence and drug trafficking. Far from being curtailed in his drug trafficking following these prior conviction, the Defendant appears to be escalating—he has gone from 11 bags of cocaine in 1992; to 56 bags of cocaine in 1996; 36 packets of heroin in and four bags of crack cocaine in 2001; to four kilograms of heroin, six firearms, and more than a half a million dollars in cash in the instant offense.

A lengthy sentence is necessary to deter the Defendant from continuing to traffic narcotics, and to protect the public from his drug trafficking activities, his firearms, and his acts of violence. A sentence within the Guidelines range of 168 to 210 months is sufficient and not greater than necessary to deter the Defendant and protect the public.

## CONCLUSION

In light of all the facts of the facts in this case, and pursuant to the sentencing objectives of 18 U.S.C. § 3553(a), the United States asks this Court to sentence the Defendant to a term of imprisonment of within 168 to 210 months.

Date: January 28, 2020

Respectfully Submitted,

ERICA H. MacDONALD
United States Attorney

*s/ Thomas Calhoun-Lopez*

BY: THOMAS CALHOUN-LOPEZ
Assistant U.S. Attorney
Attorney ID No. 480908DC